UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MELISSA BRAVO,<br>        Plaintiff,<br><br>        v.<br><br>CARRINGTON MORTGAGE SERVICES,<br>LLC,<br>        Defendant. | No. 3:24-cv-77 (SRU) |

## ORDER ON MOTION FOR RECONSIDERATION

Melissa Bravo ("Bravo") sued her mortgage servicer, Carrington Mortgage Services, LLC ("Carrington"), for an alleged violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq*. Bravo now moves for reconsideration of my order granting Carrington's motion to dismiss. For the reasons that follow, I **deny** the motion, **doc. no. 32.**

### I. Standard of Review

The standard for granting motions for reconsideration is "strict." D. Conn. L. Civ. R. 7(c)1. Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions for reconsideration will not be granted where the party merely seeks to relitigate an issue that has already been decided. *Id.* The three major grounds for granting a motion for reconsideration in the Second Circuit are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245,

1255 (2d Cir. 1992) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 4478) (internal quotation marks omitted).

The decision to grant a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). "Under the law of the case doctrine, when a court has ruled on an issue, that decision should be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Wisconsin Province of Soc'y of Jesus v. Cassem*, 2020 WL 6198485, at *1 (D. Conn. Oct. 22, 2020) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)).

## II. Background

In 2005, Bravo and her former partner, Jason Daigle ("Daigle"), refinanced their mortgage (the "2005 mortgage"). Compl., Doc. No. 1 ¶ 2.[1] Bravo and Daigle secured the mortgage with their home as collateral and each signed the mortgage's corresponding promissory note. *See id.* ¶ 3. Bravo and Daigle later separated and defaulted on the 2005 mortgage. *Id.* ¶ 4. Carrington, the loan servicer, offered Bravo two loan modification agreements. *Id.* ¶¶ 5, 16, 26. Bravo independently qualified for the loan modifications under Carrington's standards for creditworthiness. *Id.* ¶ 41.

Carrington refused to execute the first loan modification unless Bravo obtained a quitclaim deed showing that Daigle had transferred his interest in the home to her. *Id.* ¶¶ 7, 9. Bravo complied. *Id.* ¶¶ 20-21. Carrington nonetheless refused to execute the loan modification agreement until Daigle co-signed the agreement. *Id.* ¶¶ 27, 29-31.[2] After distressing interactions

---

[1] Citations to the complaint refer to the paragraphs starting at number one on page three of the complaint.
[2] In her complaint, Bravo implicitly alleges that Carrington first violated ECOA when it required Bravo to obtain Daigle's interest in the home via quitclaim deed. *Id.* ¶¶ 7, 9, 19-20, 33. Bravo now "abandons her claim that no

2

with Daigle, Bravo eventually obtained his signature on the loan modification agreement. *Id.* ¶¶ 35-36. Carrington accepted the agreement. *Id.* ¶ 37.

Bravo brought one claim for violation of the Equal Credit Opportunity Act ("ECOA") against Carrington. *See generally id.* Carrington moved to dismiss the complaint under Rule 12(b)(6). Doc. No. 15.[3] I heard oral argument on the motion, granted it with prejudice, and entered judgment for Carrington against Bravo. Docs. No. 28-29.

I granted Carrington's motion to dismiss after concluding that ECOA did not forbid Carrington from requiring Daigle to sign the loan modification agreement. Doc. No. 33 at 27-29, 36-38. I reasoned that Bravo did not refinance from a lender. *Id.* at 14. Rather, she sought to modify her 2005 mortgage from her loan servicer. *See id* at 27. The 2005 mortgage and its corresponding promissory note—binding both Bravo and Daigle—was still in effect after the parties executed the loan modification agreement. *Id.* at 23, 29. Importantly, the loan modification agreement would not have released Daigle from the 2005 mortgage and promissory note, regardless of whether he signed the agreement.[4] The loan modification would have extended Daigle's mortgage obligation for nearly thirty additional years. *Id.* at 10; *see* Doc. No. 15-6 at 8. Because Daigle was a joint applicant of the original mortgage, he was necessarily a joint applicant on the loan modification. *E.g.,* Doc. No. 33 at 38. I held that ECOA "doesn't

---

quitclaim deed was required" to execute the loan modification agreement. Doc. No. 32 at 5 n.2. I therefore only focus on the loan modification agreement executed by the parties after Daigle transferred his interest in the home to Bravo.

[3] Carrington attached the 2005 mortgage documents, the quitclaim deed, and the 2021d loan modification agreement to its motion to dismiss. Docs. No. 15-4–15-6. When I granted Carrington's motion to dismiss, I considered those documents because they were "incorporated in the complaint by reference." *Cooper v. Int'l Bus. Machines Corp.*, 2024 WL 5010488, at *4 (D. Conn. Dec. 6, 2024) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)) (cleaned up).

[4] Bravo concedes that "Daigle would not have been released from the original note or mortgage, and if Ms. Bravo later defaulted Carrington could have looked to him for payment." Doc. No. 32 at 8.

3

require, nor should it require, the servicer to proceed on a loan modification without the signatures of both of the original applicants to the original loan that's being modified." *Id.* at 38.

I granted the motion to dismiss with prejudice because it did not appear that Bravo could amend her complaint in a way that would cure its fundamental defects. *Id.* at 39. I invited Bravo to move to reconsider my ruling if she could raise "a significant argument that ha[d] not been raised" in the briefing or at oral argument. *Id.* at 39-40. Bravo then filed the instant motion for reconsideration. Doc. No. 32.

### III. Discussion

As a threshold matter, Bravo remarks that I granted Carrington's motion to dismiss with prejudice on grounds that were not raised by the parties. *See* Doc. No. 32 at 1. District courts generally lack the authority to dismiss a complaint with prejudice for failure to state a claim "on grounds neither raised nor briefed by the parties." *Volvo N. Am. Corp. v. Men's Int'l Pro. Tennis Council*, 857 F.2d 55, 65 (2d Cir. 1988). Courts ordinarily refrain from doing so because parties are entitled to notice and an opportunity to be heard before adverse judicial action is taken against them. *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) ("Though the district court has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted, it may not properly do so without giving the plaintiff an opportunity to be heard."); 5B Charles Allen Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1357 (4th ed.) ("[T]he district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

I granted Carrington's motion to dismiss on grounds raised, albeit briefly, in its reply brief: "As a co-signer of the original mortgage, the terms and conditions of which as Plaintiff asserts were kept in place in the loan modification agreement, Carrington required the same

signatures as were present on the underlying mortgage." Doc. No. 21 at 4. At oral argument, counsel raised the same argument:

> But when you have a situation where you have two people on the note and mortgage, regardless of their marital status – it doesn't matter. It doesn't matter if they were two friends. It didn't matter if they were ex-partners. It didn't matter if they were brother and sister. The fact of the matter is that Mr. Daigle was . . . still liable on the note.

Doc. No. 33 at 4.

During my colloquy with plaintiff's counsel, he responded to the reasons why I thought the complaint failed to state a claim. *Id.* at 7-18. I then invited both parties to make further argument. *Id.* at 18. Plaintiff's counsel did so. *See id.* at 23-29. When I ultimately granted Carrington's motion to dismiss, I invited plaintiff's counsel to explain how Bravo could amend her complaint to state a plausible ECOA claim. *Id.* at 39. I was unsatisfied with counsel's answer. *See id.* at 39-40. I invited him to file a motion for reconsideration if he could "come[] up with a significant argument that has not been raised." *Id.* at 39. Bravo was therefore given a sufficient "opportunity to be heard" on the Rule 12(b)(6) motion to dismiss. *See Thomas*, 943 F.2d at 260.

I now consider Bravo's cited authority in the motion for reconsideration. Bravo relies solely on out-of-circuit authority. *See generally* Doc. No. 32. As an initial matter, she fails to present "controlling decisions . . . that the court overlooked." *See Shrader*, 70 F.3d at 257. Even so, I consider the authority and arguments raised in Bravo's motion. They lead me to the same conclusion that I reached initially.

Bravo first argues that I dismissed her complaint under "a 'joint application' theory not supported by federal or state law, any regulation, or caselaw." Doc. No. 32 at 1. Creditors may require a spouse to sign a credit instrument when the spouse is a "joint applicant." 12 C.F.R. § 1002.7(d)(1). Bravo argues that Daigle was not a joint applicant despite being "a coborrower

on the original note and mortgage" because Bravo submitted an individual application for credit to Carrington and independently qualified under Carrington's standards for creditworthiness. Doc. No. 32 at 2.

Daigle was undisputedly a joint applicant and co-borrower on the original mortgage. *See* Doc. No. 15-4. At the hearing, I reasoned that Carrington, the loan servicer, did not have the authority to remove Daigle from the mortgage. *See, e.g.*, Doc. No. 33 at 10-11. Carrington's loan modification did not discharge Daigle's 2005 mortgage obligations because the loan modification was not an original mortgage application or a refinance of the mortgage. Because Bravo and Carrington did not seek to discharge the 2005 mortgage and promissory note, Daigle was necessarily a joint applicant to the loan modification agreement.

"[C]ases in which violations of the ECOA or Regulation B were found to have occurred" include those where lenders required spouses to sign notes when the spouses "were not connected to the underlying transactions for which the loans were sought." *Midlantic Nat. Bank v. Hansen*, 48 F.3d 693, 700 (3d Cir. 1995). In *Midlantic*, the spouses were "de faco joint applicant[s]" because they jointly owned the property securing the loans at issue. *Id.* Daigle, too, was a "de facto joint applicant" to the loan modification agreement because he was a joint applicant on the original mortgage. Had Bravo *refinanced* after Daigle transferred his interest in the home to her—thereby satisfying her and Daigle's 2005 mortgage obligations—ECOA's "joint applicant" exception would not apply.

I turn next to Bravo's argument that the quitclaim deed transfer sufficiently discharged Daigle's "connection" to the loan modification. "Indeed, by quitclaiming his interest in his property, Mr. Daigle had already surrendered whatever further security he could offer Carrington in connection with the modified loan." Doc. No. 32 at 9 n.8. But that argument does not address

6

Daigle's obligation on the promissory note. Bravo concedes that Daigle's promissory note obligation would still be in effect. Doc. No. 32 at 8. "But," she claims, "by way of the quitclaim, later enforcement of the mortgage – the security interest that could provide an exception for Carrington to claim – could not impact [Daigle]." *Id.* I do not share Bravo's conviction. The complaint and its incorporated documents imply that the 2005 mortgage's promissory note operates in customary fashion; Daigle could be personally liable upon Bravo's default if the collateral was insufficient to satisfy their joint obligation.

I now turn to Bravo's remaining cited authority. None compels a different outcome.

In *Ballard v. Bank of America*, 734 F.3d 308 (4th Cir. 2013), the lender violated ECOA when it required a borrower's wife to guarantee a loan when she had no ownership interest in the entity benefitting from the loan. *Id.* at 312. Bravo draws an analogy to *Ballard* because Daigle no longer had ownership interest in the collateral when Carrington required his signature.[5] Doc. No. 32 at 5-6. Bravo overlooks that in *Ballard*, the spousal-borrowers executed restructuring agreements. *Ballard*, 734 F.3d at 309, 313-14. Bravo did not restructure her mortgage and concedes that Daigle's promissory note obligations remain outstanding. *See generally* Compl., Doc. No. 1; Doc. No. 32 at 8.

In *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529 (7th Cir. 2011), ECOA's racial discrimination provision applied to a loan servicer's modification agreement. *See id.* at 532, 539. Bravo argues that ECOA thus applies to Carrington's loan modification agreement. *See* Doc. No. 32 at 3. But ECOA and Regulation B set forth enumerated exceptions to the prohibition against marital status discrimination. *See* 15 U.S.C. § 1691(b)(1); 12 C.F.R. § 1002.7(d). One exception applies when a spouse is a de facto joint applicant. *Midlantic*, 48 F.3d at 700; *Ballard*,

---

[5] Bravo "abandons her claim that no quitclaim deed" from Daigle "was required" to execute the modified loan agreement. Doc. No. 32 at 5 n.2.

7

734 F.3d at 310-11.  As discussed, that exception applies here.  In contrast, ECOA broadly prohibits racial discrimination "against any applicant, with respect to *any* aspect of a credit transaction," without enumerated exceptions.  *See* 15 U.S.C. § 1691(a)(1) (emphasis added); *see generally* 12 C.F.R. § 1002.7.  The prohibition against racial discrimination, unlike marital status discrimination, extends to an original loan, a lender's refinancing, or a servicer's loan modification.  *See* 15 U.S.C. § 1691(a)(1).

For those reasons, I adhere to my previous ruling that ECOA did not prohibit Carrington from requiring Daigle to sign the mortgage modification documents.  I **deny** Bravo's motion for reconsideration, **doc. no. 32**.

So ordered.

Dated at Bridgeport, Connecticut, this 6th day of June 2025.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

8